IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| TROVE BRANDS, LLC d/b/a THE BLENDERBOTTLE COMPANY, a Utah limited liability company,<br><br>        Plaintiff,<br><br>        v.<br><br>CALIFORNIA INNOVATIONS INC. d/b/a ARCTIC ZONE,<br><br>        Defendant. | Case No. 1:21-cv-1132<br><br>Judge Sara L. Ellis<br><br>Magistrate Judge Heather K. McShain |

**DEFENDANT CALIFORNIA INNOVATIONS INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Defendant California Innovations Inc. d/b/a/ Arctic Zone ("Arctic Zone") by and through its counsel, hereby submits this Memorandum of Law in Support of its Rule 12(b)(6) Motion to Dismiss the First Amended Complaint filed by Plaintiff, Trove Brands, LLC d/b/a The BlenderBottle Company ("Trove"), for failing to state a claim for which relief may be granted.

## INTRODUCTION & BACKGROUND[1]

In lieu of responding to Arctic Zone's Motion to Dismiss (Dkt. 19) on its merits, Trove elected to file its First Amended Complaint ("FAC"). (Dkt. 23.) While the Rules permit Trove to file this amended pleading as a matter of right, Trove's cosmetic changes do little to correct the deficiencies of the original complaint. Like the original complaint, the FAC asserts one count for infringement of a now-expired patent and five duplicative counts all stemming from Trove's claim

---

[1] The facts recited from the FAC are taken as true only for purposes of Arctic Zone's Motion to Dismiss. *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005). For facts that Trove elected not to include in the FAC, the Court may take judicial notice of those facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, or the Court may elect to convert this Rule 12(b)(6) motion into a motion for summary judgment pursuant to Rule 12(d). *Doss v. Clearwater Title Co.*, 551 F.3d 634, 640 (7th Cir. 2008).

1

that Arctic Zone has infringed its "Bottle Trade Dress," defined by Trove as features generally directed to the design of the lid to its water bottles. (FAC at ¶¶ 11-12.)

According to the FAC, Trove is the proprietor of BlenderBottle®. (FAC at ¶ 7.) In conjunction with Trove's claim to have "pioneered innovative technology" (*id.*), Trove asserts U.S. Patent No. 6,379,032 ("the '032 patent"), entitled "Flow-Through Agitator." (*Id.* at ¶ 9.) According to its abstract, the '032 patent "relates to apparatus and methods for improved mixing of powder and liquid mixtures through the use of flow-through agitator apparatus." (Dkt. 23-1 at Abstr.) The "preferred embodiments of the present invention comprises a wire-framed object with interstitial space which allow flow of liquids and powders into and out of the interior of the wire-frame object." (*Id.*) The first page of the patent includes a picture of this wire-framed object, which bears a striking resemblance to BlenderBottle's logo:



| D.I. 23-1 at 1. | FAC at ¶ 11. |

The bulk of the Complaint is devoted to explaining Count 2, which asserts that Arctic Zone has infringed Trove's "Bottle Trade Dress," which it defines as "a tall cylindrical form; a top lid element with a tall shoulder; a recessed domed top from which a conical spout protrudes on one side and a pair of brackets on the opposing side; and the brackets host a pivoting arm containing a circular spout closure element." (FAC at ¶ 12.) The FAC expands from the original complaint's definition of the alleged "Bottle Trade Dress" to include alternate designs of its lid; yet it does not allege that these alternative lid designs are infringed by Arctic Zone. Under either definition, the

fact remains that the alleged "Bottle Trade Dress" has nothing to do with BlenderBottle's alleged recognition in the marketplace, and the FAC does nothing to address this glaring inconsistency.

Conspicuously absent from the FAC is that an entity affiliated with Trove, Runway Blue LLC, has sought to register the alleged Bottle Trade Dress with the USPTO, and its application has received a non-final rejection. (Exhibit A, Printout of Status of U.S. Trademark App. Serial No. 90301455 taken from USPTO Trademark Status & Document Retrieval Portal at 1; Exhibit B, Nonfinal Office Action Re App. No. 90301455 (Mar. 1, 2021); *see also* Dkt. 23-2 Ex. 2.) Of particular significance is that the entity applying to register the trade dress before the USPTO is not a party to this action, and the FAC is silent as to the ownership of the asserted Bottle Trade Dress. And while Trove alleges in the FAC that it is the exclusive licensee of the '032 Patent, its prior correspondence lists a corporation known as Sundesa, LLC as the exclusive licensee. (Dkt. 23-2.) Therefore, there is a significant question as to whether Trove has the appropriate standing to assert any of the rights it claims in this Action. Moreover, according to the USPTO, the elements alleged by Runway Blue LLC in is application (and by Trove as its Bottle Trade Dress in the FAC) consist of "nondistinctive features of a product design" that are not eligible for protection under the Lanham Act. (Ex. B. at 2-3.)

Trove's alleged "Bottle Trade Dress" clearly lacks the type of ornamental design features that would be protected by trade dress. Indeed, in rejecting Trove's application for protection of the alleged Bottle Trade Dress, the USPTO found that "the following elements are functional: the conical spout, the bracket or hinge element, the round base of the lid, and the recessed domed top." (*Id*. at 4.) Since it is well-settled that to be protected under the Lanham Act, trade dress must be non-functional, Trove's claim must fail.

The USPTO also rejected the application from Runway Blue because it had not established

secondary meaning. (Ex. B. at 2-3.) It is no surprise, therefore, that even after amending, Trove still provides no factual basis, or even a contention, in the FAC as to why the lid trade dress "has established strong secondary meaning and extensive goodwill." (*Id*. at ¶ 18.) The failure to sufficiently plead this element of a protectable trade dress—along with the significant question of standing—renders the claim irredeemable. Claims under the Lanham Act must be pleaded with particularity under Fed. R. Civ. P. 9(b); even construed in a light most favorable to Trove, however, Trove does not connect the dots to form a cognizable claim.

The remainder of the FAC simply attempts to repackage the trade dress infringement claim under different covers of law, doing nothing to address the deficiencies Arctic Zone explained in its original motion. For example, Count 3 claims that by using the alleged Bottle Trade Dress, Arctic Zone has engaged in false designation of origin and unfair competition. (*Id*. at ¶ 54.) But Trove is not allowed to double-dip in this fashion, and courts have recognized that this is simply a duplicative claim for trade dress infringement. Counts 4-6 attempt to do the same, alleging that the same alleged act of trade dress infringement also constitutes violations of Illinois law. Because Trove's claims fail under the Lanham Act, so too must these claims be dismissed.

Trove's *ipse dixit* is not sufficient to confer the Lanham Act's protections to this alleged trade dress that is ancillary to the BlenderBottle brand, nor is it sufficient under state law. Instead, it is an improper attempt to expand its intellectual property protection well beyond reason. This Court, therefore, should dismiss with prejudice Counts 2-6 of the Complaint.

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) must be granted when the complaint fails to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A facially plausible claim is one where the well-pleaded facts "nudge[] [the] claims . . . across the finish line from conceivable to plausible," and

4

allow a court to "infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679-80. The pleading requirements of Fed. R. Civ. P. 8 demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP*, 861 F.3d 644, 649 (7th Cir. 2017).

When reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept well-pleaded allegations in the Complaint as true and draw all inferences in favor of the plaintiff. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The Court, however, is not "bound to accept as true a legal conclusion couched as a factual allegation." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1092 (7th Cir. 2008) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Even where a plaintiff does plausibly allege the elements of a claim, "a party may plead itself out of court" if its Complaint includes "facts that establish an impenetrable defense to the claims." *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 650 (7th Cir. 2006).

## ARGUMENT

### I. Trove's Lanham Act Claims Fail to State a Claim on Which Relief Can Be Granted

Trove's Lanham Act claims (Counts 2 and 3 of the FAC) are a classic example of failing to plead a claim on which relief can be granted: threadbare recitals of the elements of the cause of action supported only by conclusory statements. *Iqbal*, 556 U.S. at 678. In Count 2, Trove claims to have protectable trade dress in the design of the lid of it water bottles. (FAC at ¶ 12.) Count 3 does little more than double-down on these conclusory allegations, stating that by infringing Trove's trade dress, Arctic Zone also engaged in false designation of origin, passing off, and/or unfair competition. (*Id*. at ¶¶ 54-55.)

The Lanham Act's protection only includes a product design that is so distinctive it identifies the product's source—a standard that the FAC does not meet. *Arlington Specialties, Inc.*

5

*v. Urban Aid, Inc.*, 847 F.3d 415, 418 (7th Cir. 2017). Thus, to plead a product design trade dress infringement claim, Plaintiff must ***plausibly*** plead facts demonstrating that: (1) its trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) a likelihood of confusion exists between its trade dress and Defendant's trade dress. *LoggerHead Tools, LLC v. Sears Holding Corp.*, No. 12-CV-9033, 2015 WL 303071, at *2 (N.D. Ill. Jan. 22, 2015) (citing *Incredible Tech. Inc. v. Virtual Tech., Inc*., 400 F.3d 1007, 1015 (7th Cir. 2005)). While Trove's Complaint literally recites these elements, it offers no facts in support even given the chance to amend to address these specific deficiencies, and thus must be dismissed for failing to state a claim on which relief can be granted.

As to Count 3, if Trove's "unfair competition claim really seeks to hold [Arctic Zone] liable for copying [Trove's] trade dress, [] the two claims are duplicative." *Weber-Stephen Prods., LLC v. Sears Holding Corp.*, No. 13-cv-01686, 2013 WL 5782433, at *2 (N.D. Ill. Oct. 25, 2013). Thus, as in *Weber-Stephens*, the Court should treat Counts 2 and 3 as a single claim for trade dress infringement. *Id.; see also Chartwell Studio, Inc. v. Team Impressions, Inc*., No. 19-cv-06944, 2020 WL 4053752 at *3 n.2 (N.D. Ill. July 20, 2020). However, to the extent that there is any difference between Counts 2 and 3, Count 3 should be dismissed for completely failing to meet the Rule 9(b) heightened pleading standard for claims premised upon a course of fraudulent conduct. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Rule 9(b) requires a plaintiff to state with particularity the circumstances constituting the allegedly fraudulent conduct, including "the who, what, when, where, and how." *AnchorBank FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (internal quotation marks omitted). Trove pleads none of those circumstances, and Claim 3 must be dismissed.

    **A. The Alleged Trade Dress in Functional.**

A feature of a product is function "if it is essential to the use or purpose of the article or if

it affects the cost or quality of the article." *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32 (2001). Here, Trove pleads itself out of court in textbook style by eschewing any description of the features of the alleged Bottle Trade Dress that may be ornamental and only defining its alleged trade dress in its basic functional terms. *Massey*, 464 F.3d at 650 (holding that "a party may plead itself out of court" by including "facts that establish an impenetrable defense to the claims").

The functionality of the features of the alleged Bottle Trade Dress served as the basis for rejection of Lanham Act protection by the USPTO. (Ex. B at 4.) As noted by the Examiner, the elements of Trove's alleged trade dress: the conical spout, the bracket or hinge element, the round base of the lid, and the recessed domed top are functional because "they are commonly used in goods of the type described in the application which reflects that there are few alternative designs available." (*Id.*; *see also id.* at 6-32 (attaching examples of similar lid designs).) However, even notwithstanding these commonly available items, the Examiner found that Trove's own design patent, U.S. D830,119 described most of the features in the alleged Bottle Trade Dress as "unregisterable [sic] functional elements of the bottle lid." (*Id.* at 4; *see also id. at* 33-41 (attaching U.S. D830,119).)

To the extent the Bottle Trade Dress contains any actually ornamental features, Trove simply has not plausibly pled or described them. Thus, for the same reasons observed by the USPTO, the Court should deny Lanham Act protection to Trove's alleged Bottle Trade Dress.

**B. The Alleged Trade Dress does not have Secondary Meaning.**

Trade dress acquires secondary meaning when, "in the minds of the public, the primary significance of a product feature…is to identify the source of the product rather than the product itself." *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 291 (7th Cir. 1998) (alteration in original); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 766 n.4, 768 (1992) (holding that

7

to be protectable, the Plaintiff must show that trade dress "has come through use to be uniquely associated with a specific source."). Trove has not stated a plausible claim here.

First, simply stating that a product is unique is not sufficient to state a claim. *Mighty Deer Lick, Inc. v. Morton Salt, Inc*., No. 17-CV-05875, 2020 WL 635904, at *8 (N.D. Ill. Feb. 11, 2020). Yet, Trove merely alleges that its BlenderBottle has "a distinctive trade dress," without providing any details that would support its claim. (FAC at ¶ 11.) Trove also failed to provide such details to the USPTO, who rejected Trove's request for registration of the alleged Bottle Trade Dress because it "consists of a nondistinctive product design or nondistinctive features of a product design that is not registrable." (Ex. B at 3.) While this was a non-final rejection which invited Trove to provide evidence of the distinctiveness of the alleged Bottle Trade Dress, Trove plainly cannot do so. Rather, Trove's product, which is already marked with a registered trademark, is called Blender***Bottle***, yet beyond a generic claim to a cylindrical bottle shape, the alleged trade dress describes only the ***lid*** of the product. (FAC at ¶ 12.) Trove provides no explanation for why these characteristics of the lid of the product are inherently distinctive or how the use of this lid has allowed the public to recognize and identify water bottles as emanating from BlenderBottle.

In lieu of providing any such factual explanation in the FAC, Trove opted instead to ***expand*** the definition of its Bottle Trade Dress, so that it "includes, but is not limited to" (1) the original lid, which Trove no longer sells,[2] and (2) its new style of lid with a "Carry Loop,"[3] which Trove does not (and cannot) allege that Arctic Zone sold. (*Compare* FAC at ¶¶ 11-12, *with* Compl, Dkt. 1 at ¶¶ 11-12.) By expanding its definition of the alleged trade dress and leaving its definition open-ended such that it can add elements at will, Trove ostensibly admits that these lids are not

---

[2] The original lid Trove asserted as an example of its Bottle Trade Dress is no longer even available as a replacement part. *See* Exhibit C, https://www.blenderbottle.com/products/replacement-lids (last accessed May 24, 2021).
[3] *See* Exhibit D, https://www.blenderbottle.com/collections/all-products (last accessed May 24, 2021).

unique, nor are they the reason that the public identifies the BlenderBottle.

In reality, BlenderBottle's branding is focused on the "BlenderBall," the distinctive wire-framed ball included in its products. Indeed, on its website, Trove tells consumers to "Look for the Ball…When you see the ball, you know you have a BlenderBottle brand shaker," as shown in the screenshot below:[4]



Unsurprisingly, in other pleadings attempting to enforce BlenderBottle's alleged trade dress, Trove explains that it is the trade dress associated with this ball (called the "Agitator Trade Dress") that forms the basis for the company's logo, "symboliz[ing] the company itself and … a registered trademark used by BlenderBottle® as its corporate logo." (Exhibit F (Tejarah Compl.) at ¶ 18.) Of course, Arctic Zone's product in no way resembles the distinctive whisk that is the subject of Trove's patent and thus could not plausibly be asserted here. Trove has no leg to stand on.

C.  There is no Likelihood of Confusion.

Trove's trade dress claim also fails for the additional and independent reason that it has not sufficiently pleaded a likelihood of confusion. *Knaack Mfg. Co. v. Rally Accessories, Inc.*, 955 F. Supp. 991, 1000 (N.D. Ill. 1997) (holding that a plaintiff must plead a *likelihood* of consumer confusion, not a mere possibility of confusion). Courts in this Circuit weigh the following factors when assessing the likelihood of confusion: "(1) similarity between the marks in appearance and

---

[4] *See* Exhibit E, www.blenderbottle.com (last accessed May 24, 2021).

suggestions; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of defendant to palm-off his product as that of another." *Smith Fiberglass Prod., Inc. v. Ameron, Inc.*, 7 F.3d 1327, 1329 (7th Cir. 1993). While these individual factors are factual in nature, whether a plaintiff has provided a set of facts that could amount to a likelihood of confusion is a legal issue. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673-74 (7th Cir. 2001). Additionally, the likelihood of consumer confusion must be assessed with reference to the realities of consumer behavior in the relevant market. *S Indus., Inc. v. Stone Age Equip., Inc.*, 12 F. Supp. 2d 796, 812 (N.D. Ill. 1998).

Trove's Complaint provides little more than conclusory allegations that consumers are "likely to be confused," which do not make sense on their face. Rather, Trove complains that despite its significant media attention, celebrity endorsements, and extensive advertising, resulting in millions of dollars in revenue, (FAC at ¶¶ 14-17,) its products will somehow be confused with Arctic Zone's products which do not contain a similar logo, color scheme, or most importantly, the signature BlenderBall. *Incredible Tech.*, 400 F.3d at 1015-16 (affirming denial of preliminary injunction where product colors and logos were different). More importantly, however, the FAC still does not address that the allegedly infringing product, the AZ Pro Shaker, has never been available for sale individually. Indeed, the AZ Pro Shaker bottle could only be acquired by customers as part of a multi-item set featuring Arctic Zone's primary product line: Arctic Zone Coolers. (Mogil Decl., Exhibit G, at ¶ 3.) Trove does not (and cannot) explain how a consumer purchasing a cooler from Arctic Zone and receiving a complimentary shaker bottle could cause confusion with the BlenderBottle product generally, let alone confuse the very limited design

elements of the lid that comprise Trove's alleged trade dress here.[5] As such, there can be no likelihood of confusion.

## II. Trove's State Law Claims Are Derivative of the Lanham Act Claims and Must Likewise Be Dismissed.

Trove also brings claims for violations of the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS § 510, *et seq*. (Count 4), and the Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS § 505/1, *et seq*. (Count 5), as well as a claim for unfair competition under Illinois common law (Count 6). These three claims rely on and re-allege the same facts underlying the Lanham Act claims; therefore, the claims must be resolved according to the same principles. *Gimix, Inc. v. JS&A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983); *MJ & Partners Rest. Ltd. P'ship v. Zadikoff*, 10 F. Supp. 2d 922, 929 (N.D. Ill. 1998) (dismissing deceptive trade practices claims based on dismissal of trademark infringement claim); *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994) ("Illinois courts look to federal case law and apply the same analysis to state infringement claims."); *SB Designs v. Reebok Int'l, Ltd.*, 338 F. Supp. 2d 904, 914 (N.D. Ill. 2004) (same). Since Trove failed to adequately plead its Lanham Act claims, this Court must also dismiss the state law claims.

### A. Trove Is Not Entitled to Injunctive Relief Under the Illinois Uniform Deceptive Trade Practices Act.

In Count 4, Trove admits that the only basis for its UDTPA claim is a violation of the Lanham Act as claimed in Counts 2 and 3. (FAC at ¶ 64.) Like the Lanham Act claims, a UDTPA claim must show that a defendant caused a likelihood of confusion or misunderstanding. *See* 815 ILCS 510/2(a)(2) & (8); *Lynch Ford, Inc. v. Ford Motor Co., Inc.*, 957 F. Supp. 142, 147 (N.D. Ill. 1997) ("[T]he defendant must make some form of a representation (or do something) to the

---

[5] On information and belief, Trove does not sell coolers under the BlenderBottle brand, further barring any confusion or damages.

public (or a potential buyer) regarding a good or service."); *see Custom Bus. Sys. Inc. v. Boise Cascade Corp.*, 68 Ill. App. 3d 50, 54 (3rd Dist. 1979) (upholding dismissal of UDTPA claim for failing to allege substantial likelihood of confusion where allegations did not support uniqueness or secondary meaning). Trove has not done so, and thus Count 4 fails to state a claim.

Beyond that, Count 4 must fail because the UDTPA "does not provide a cause of action for damages, but it does permit private suits for injunctive relief," which requires a showing of the likelihood of future harm. *Yeager v. Innovus Pharm, Inc.*, No. 18-CV-397, 2019 WL 447743, at *7 (N.D. Ill. Feb. 5, 2019). As explained above, the Complaint does not (and cannot) allege a risk of past or present harm, let alone any future harm. This alone warrants dismissal of Count 4. *ATC Healthcare Svc., Inc. v. RCM Techs., Inc.*, 282 F. Supp. 3d 1043, 1050 (N.D. Ill. 2017) (dismissing UDTPA claims where plaintiff failed to allege future harm).

### B. Trove's Illinois Consumer Fraud and Deceptive Business Practices Act Claim Must Be Dismissed for its Pleading Deficiencies.

Count 5 is again duplicative, alleging that the unfair competition alleged in Count 4 also constitutes a violation of the ICFA. (FAC at ¶ 70.) Since this claim also depends on the same factual allegations as the Lanham Act claims, it fails for the same reasons. *MJ & Partners Rest.*, 10 F. Supp. at 929.

Count 5 additionally fails independently for failure to plead with sufficient specificity under Fed. R. Civ. P. 9(b). Courts in this Circuit require ICFA claims to be plead pursuant to Rule 9(b), which requires specificity regarding "the who, what, when, where, and how" of the fraud. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736-37 (7th Cir. 2014). Trove's conclusory allegations do not meet the heightened pleading standard that ICFA claims require. *Rockford Mem'l Hosp. v. Havrilesko*, 368 Ill. App. 3d 115, 123 (2d Dist. 2006) ("The bald assertion of deception is insufficient to state a claim.").

Moreover, the ICFA claim must be dismissed for failing to allege a nexus to consumer protection concerns. *Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436-37 (7th Cir. 1996); *Indus. Specialty Chem., Inc. v. Cummins Engine Co., Inc*., 902 F. Supp. 805, 812 (N.D. Ill. 1995). Here, Trove only "seeks a remedy to address a wrong of a private party, not consumers at large," and thus has not stated a claim under the ICFA. *Chartwell Studio*, 2020 WL 4053752, at *6 (N.D. Ill. July 20, 2020) (dismissing ICFA claim with prejudice) (internal citations omitted).

### C. Trove's Redundant Common Law Unfair Competition Claim Has Been Preempted by the UDTPA and Must Be Dismissed.

In Count 6, Plaintiff alleges that Arctic Zone engaged in common law unfair competition through its "reliance on and exploitation of consumer mistake and confusion." (FAC at ¶ 78.) This claim must be dismissed because it re-alleges and relies on operating facts that are identical to those alleged under the UDTPA. *LG Elecs. v. Whirlpool Corp*., No. 08 C 242, 2010 WL 3521785, at *2 (N.D. Ill. Sept. 1, 2010). The UDTPA codified common law unfair competition, and courts typically do not address such claims separately. *MJ & Partners Rest.*, 10 F. Supp. at 929. Since the UDTPA claims fail to state a claim on which relief can be granted, this common law claim fails as well. *See Desmond v. Chicago Boxed Beef Distrib., Inc*., 921 F. Supp. 2d 872, 885 (N.D. Ill. 2013) (gathering cases); *Platinumtel Commc'ns, LLC v. Zefcom, LLC*, No. 08-CV-1062, 2008 WL 5423606, at *8 (N.D. Ill. Dec. 30, 2008); *SB Designs*, 338 F. Supp. 2d at 914.

### III. Trove's Willful Patent Infringement Allegations Should Be Dismissed

Even when viewed in a light most favorable to Trove, the allegations of the FAC fail to state a claim for willful infringement of the '032 patent. (*See* FAC at ¶¶ 37, 40.) Instead, Trove relies on (1) a conclusory cease and desist letter dispatched a mere 34 days before the expiration of the '032 patent; and (2) Trove's puffery which outlandishly claims that Arctic Zone must have been aware of Trove's patents because the BlenderBottle is so popular. Neither is sufficient to

13

state a claim on which relief can be granted. [6]

Courts throughout the country dismiss claims for willfulness unless there is a showing of "deliberate or intentional infringement." *Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020). In other words, the complaint must at least allege "that the defendant (1) knew of the patent and (2) knew that its conduct infringed." *Dresser, LLC v. VRG Controls, LLC*, No. 18 C 1957, 2018 WL 10426611 at *4 (N.D. Il. Nov. 28, 2018); *see also Välinge Innovation AB v. Halstead New England Corp.*, No. 16-1082-LPS-CJB, 2018 WL 2411218 at *13 (D. Del. May 29, 2018) ("there must be some other factual allegations that go to the accused infringer's subjective intent to infringe"). The FAC fails to meet this standard.

As in the original complaint, Trove admits that it first notified Arctic Zone of its claim in a letter it sent on January 15, 2020. (FAC at ¶ 27.) Without explanation or claim charts from which Arctic Zone could plausibly understand Trove's allegations, the letter's conclusory allegations were hardly sufficient to put Arctic Zone on notice. *Fluidigm Corp. v. IONpath, Inc.*, No. C 19-05639 WHA, 2020 WL 408988 at *5 (N.D. Cal. Jan. 24, 2020) (dismissing willful infringement claims in part because plaintiff's letter did not "detail[] how defendants allegedly infringed"); *Schwendimann v. Stahls', Inc.*, No. 19-CV-12139, 2021 WL 37729 at *8 (E.D. Mi. Jan. 4, 2021) (allegations that "d[id] not set forth discussions about 'how' defendant infringe[d]…the patents-in-suit" were not sufficient to "support a reasonable interface of intentional or knowing infringement").

Even assuming, *arguendo*, that the January 15, 2020 letter constituted sufficient notice—

---

[6] Based on further investigation subsequent to the filing of the prior motion to dismiss (now mooted), counsel for Defendant wants to clarify that though Arctic Zone argued in its prior to motion to dismiss that no sales of the accused product were made after 2019, subsequent investigation revealed that sales were made after 2019, and, accordingly, that prior argument is withdrawn and not asserted here.

which it did not—the '032 Patent expired 34 days later, on February 18, 2020.[7] Thus, in an attempt to compensate for this *de minimis* period, Trove updated the FAC to include irrelevant allegations that "[u]pon information and belief, Defendant was aware of…[BlenderBottle's] intellectual property rights" because it "is a market leader for shaker bottle products," (FAC at ¶ 29) and that Trove "identified its patents covering its products including the '032 patent on its publicly available website." (*Id*. at ¶ 30.) At most, these allegations relate to constructive, not actual knowledge, which is legally insufficient. *Schwendimann*, 2021 WL 37729 at *6 n.3 ("given the lack of factual allegations that defendant is a NuCoat customer or has otherwise seen the marked items, the Court finds that NuCoat's marking does not support an inference of defendant's actual, as opposed to constructive, knowledge of the patents-in-suit"); *Deckers Outdoor Corp. v. J.C. Penney Co. Inc.*, 45 F. Supp. 3d 1181, 1187-88 (C.D. Cal. 2014) (that products had "garnered widespread popularity" and were "stamped with patent notice" did not establish defendant's knowledge of the asserted patent).

## CONCLUSION

For all of the foregoing reasons, Arctic Zone respectfully requests that Plaintiff's First Amended Complaint be dismissed in its entirety for failure to state any claim on which relief can be granted, along with any other proper relief.

DATED: July 9, 2021

NIXON PEABODY LLP

*/s/ Deanna R. Kunze*

Deanna R. Kunze (Ill. Bar No. 6287513)
dkunze@nixonpeabody.com
Benjamin P. Rosborough (Ill. Bar No.

---

[7] The '032 Patent was issued from an application filed February 18, 2000. (Dkt. 23-1 at 1.) Thus, by law, the patent expired 20 years from that date: February 18, 2020. 35 U.S.C. § 154(a)(2); *see also Mayo Found. for Med. Educ. and Rsch. v. Iancu*, 938 F.3d 1343, 1345 (Fed. Cir. 2019).

15

6321407)
brosborough@nixonpeabody.com
Katie M. Burnett (Ill. Bar No. 6326652)
kburnett@nixonpeabody.com
Zachary L. Sorman (Ill. Bar No. 6310213)
zsorman@nixonpeabody.com
70 West Madison Street, Suite 3500
Chicago, IL 60602
Tel: (312) 977-4400
Fax: (312) 977-4405

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on July 9, 2021, she served a copy of the foregoing on all counsel of record via electronic case filing procedures.

/s/ *Deanna R. Kunze*
*Counsel for Defendant*