UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TROVE BRANDS, LLC d/b/a THE BLENDERBOTTLE COMPANY, a Utah limited liability company, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| CALIFORNIA INNOVATIONS INC. d/b/a ARCTIC ZONE, | ) ) ) |
| Defendant. | ) ) |

No. 21 C 1132

Judge Sara L. Ellis

## OPINION AND ORDER

Plaintiff Trove Brands, LLC, d/b/a The BlenderBottle Company ("BlenderBottle") sells drink dispensers that also allow for the combination of powders and liquids in the same container. According to BlenderBottle, California Innovations Inc. d/b/a Arctic Zone ("Arctic Zone") sells a highly similar drink dispenser, confusing consumers into thinking they are purchasing BlenderBottle's product. In its first amended complaint ("FAC"), BlenderBottle brings federal claims against Arctic Zone for patent infringement under 35 U.S.C. § 271 (Count 1), trade dress infringement under 15 U.S.C. § 1125(a) (Count 2), and unfair competition and false designation of origin under 15 U.S.C. § 1125(a) (Count 3). BlenderBottle also brings state law claims for violation of the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp. Stat. 510/1 *et seq.* (Count 4), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.* (Count 5), and unfair competition (Count 6). Arctic Zone has moved to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). Because BlenderBottle has sufficiently pleaded its claims, however, the Court denies Arctic Zone's motion to dismiss.

**BACKGROUND**[1]

On April 30, 2002, the United States Patent and Trademark Office ("USPTO") issued U.S. Patent No. 6,379,032 (the "'032 Patent"), titled "Flow-through Agitator." The '032 Patent "relates to apparatus and methods for improved mixing of powder and liquid mixtures through the use of flow-through agitator apparatus," specifying as the preferred embodiment "a wire-frame object with interstitial spaces which allow flow of liquids and powders into and out of the interior of the wire-frame object." Doc. 23-1 at 2. BlenderBottle is the exclusive licensee of the '032 Patent and has all rights thereunder, including the right and standing to enforce the patent.

BlenderBottle produces and sells a container that allows a consumer to combine powders and liquids within it and also use it as a drink dispenser. These so-called shakers include a wire-framed object similar to the preferred embodiment discussed in the '032 Patent. Additionally, although shakers can come in many shapes and structures, BlenderBottle's shakers have a distinctive trade dress, consisting of "a tall cylindrical form; a top lid element with a tall shoulder; a recessed domed top from which a conical spout protrudes on one side and a pair of brackets on the opposing side; and the brackets host a pivoting arm containing a circular spout closure element" (the "Bottle Trade Dress"). Doc. 23 ¶ 12.

Consumers can find BlenderBottle's shakers in over ninety countries and 60,000 retail locations, including Costco, Sam's Club, Target, Walmart, GNC, Amazon, Dick's Sporting Goods, and Vitamin Shoppe. BlenderBottle advertises widely, including through its website, social media, trade shows, flyers, and other advertisements. The media has highlighted

---

[1] The Court takes the facts in the background section from the FAC and the exhibits attached thereto and presumes them to be true for the purpose of resolving Arctic Zone's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Arctic Zone asks the Court to consider a number of documents in connection with its motion to dismiss, but the Court refuses to do so in this case because the documents are not "central to the complaint and referred to in it" or subject to judicial notice. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013); *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1043–44 (7th Cir. 2019).

BlenderBottle's shakers, and various celebrities have been photographed with BlenderBottle's shakers as well. The public has since come to recognize and identify shakers bearing the Bottle Trade Dress as high-quality products created by BlenderBottle, and BlenderBottle has derived significant revenue from their sale.

Arctic Zone has developed and sells shakers with a similar design to that of the BlenderBottle shaker. Arctic Zone sells these shakers, the AZ Pro Shaker Bottles, through major retailers in the United States, including Sam's Club. The FAC includes the following representative images of BlenderBottle and Arctic Zone shakers:



*Id.* ¶ 44.

On January 15, 2020, BlenderBottle sent Arctic Zone a cease and desist letter demanding that Arctic Zone stop selling its shakers, which BlenderBottle maintained infringed at least claim 18 of the '032 Patent and the Bottle Trade Dress.[2] BlenderBottle included representative images of both its and Arctic Zone's shakers in the letter. It also noted that "[a]ny further sales of the infringing products will constitute additional evidence of willful infringement." Doc. 23-2 at 3.

---

[2] The letter was sent on behalf of Runway Blue, LLC and its exclusive licensee, Sundesa, LLC d/b/a BlenderBottle Company. In its response to the motion to dismiss, BlenderBottle represents that Sundesa, LLC changed its name to Trove Brands, LLC before the filing of this lawsuit but after sending the January 15, 2020 letter to Arctic Zone.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

**I.     Trade Dress Claims (Counts 2 and 3)**

BlenderBottle brings claims for trade dress infringement and unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a). Because the unfair competition and false designation of origin claim essentially seeks to hold Arctic Zone liable for trade dress infringement, the Court considers the claims together. *See Weber-Stephen Prods. LLC v. Sears Holding Corp.*, No. 13-cv-01686, 2013 WL 5782433, at *1 n.2, 2 (N.D. Ill. Oct. 25, 2013) ("Weber's unfair competition claim really seeks to hold Sears liable for copying Weber's trade dress, meaning that the two claims are duplicative. Accordingly, the Court construes them as a single claim for trade dress infringement."). To state a claim for trade dress infringement, BlenderBottle must allege (1) its trade dress is nonfunctional, (2) its trade dress has acquired

4

secondary meaning, and (3) a likelihood of confusion exists between BlenderBottle's and Arctic Zone's trade dress. *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1015 (7th Cir. 2005). Arctic Zone argues that the FAC only includes conclusory allegations of each of these elements, and so the Court addresses the elements in turn.

### 1. Functionality

The FAC defines the Bottle Trade Dress as: "a tall cylindrical form; a top lid element with a tall shoulder; a recessed domed top from which a conical spout protrudes on one side and a pair of brackets on the opposing side; and the brackets host a pivoting arm containing a circular spout closure element."[3] Doc. 23 ¶ 12. Arctic Zone argues that BlenderBottle has defined the Bottle Trade Dress in only functional terms, meaning that it has failed to allege a basis for trade dress protection. A product is functional "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001) (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995)). A product also is functional "if it is a 'competitive necessity,' that is, if its exclusive use 'would put competitors at a significant non-reputation-related disadvantage.'" *Arlington Specialties, Inc. v. Urban Aid, Inc.*, 847 F.3d 415, 419 (7th Cir. 2017) (quoting *TrafFix Devices*, 532 U.S. at 32–33).

In support of its argument, Arctic Zone relies on the USPTO's March 1, 2021 nonfinal office action that rejected a trademark application for BlenderBottle's bottle lid, which identified the following elements of the lid as functional: "the conical spout, the bracket or hinge element,

---

[3] Although the FAC uses language that the Bottle Trade Dress "includes, but is not limited to" the listed features, Doc. 23 ¶ 12, the Court limits the Bottle Trade Dress to those elements specifically described in the FAC only, *see Chartwell Studio, Inc. v. Team Impressions, Inc.*, No. 19-cv-06944, 2020 WL 4053752, at *4 (N.D. Ill. July 20, 2020) (because "Chartwell's asserted trade dress cannot be unlimited in scope," construing the trade dress as "the overall look created by the seven listed elements *in combination*"); *Weber-Stephen Prods.*, 2013 WL 5782433, at *3–4 (limiting trade dress to the specific features described in the complaint, reading out the complaint's language that the trade dress included "without limitation" certain features).

5

the round base of the lid, and the recessed domed top." Doc. 28-2 at 5. The USPTO examiner noted that these elements "are commonly used in goods of the type described in the application which reflects that there are few alternative designs available." *Id.* But the Court does not find it appropriate to consider the USPTO's March 1, 2021 nonfinal office action at the pleading stage.[4] *Cf. Gen. Elec. Cap. Corp. v. Lease Res. Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) ("A court may take judicial notice of an adjudicative fact that is both 'not subject to reasonable dispute' and either 1) 'generally known within the territorial jurisdiction of the trial court' or 2) 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" (quoting Fed. R. Evid. 201(b))). Even were the Court to consider the nonfinal action, Arctic Zone has not provided any legal basis for the Court to find that the examiner's interim determination on functionality of a related, but not identical, combination of BlenderBottle's shakers' elements precludes BlenderBottle from demonstrating functionality here.

Instead, functionality is typically a question of fact, *Ga.-Pac. Consumer Prods. LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 727 (7th Cir. 2011), and inappropriate for resolution at the pleadings stage, *Toyo Tire & Rubber Co. v. Atturo Tire Corp.*, No. 14 CV 00206, 2015 WL 13913257, at *3 (N.D. Ill. Mar. 13, 2015). BlenderBottle contends that it has sufficiently pleaded nonfunctionality because it has highlighted existing alternative designs for shakers in the FAC and alleged that the Bottle Trade Dress resulted from decisions about ornamentation, does not involve a comparatively simple and inexpensive manufacturing method, and does not

---

[4] Since the parties briefed Arctic Zone's motion to dismiss, the USPTO examiner has approved the requested trademark for publication. Although this does not mean that the trademark is officially registered, it suggests that the applicant addressed the problems raised by the examiner in the March 1, 2021 nonfinal office action. *See* USPTO, Examination of your application, https://www.uspto.gov/trademarks/basics/examination-application; USPTO, Approval for publication, https://www.uspto.gov/trademarks/basics/approval-publication.

provide a utilitarian advantage. While BlenderBottle may have difficulty establishing nonfunctionality on a more complete record, at this stage, the Court finds the FAC's allegations suffice to suggest the nonfunctionality of the Bottle Trade Dress. *See Chartwell Studio*, 2020 WL 4053752, at *5 ("It is plausible to infer from both the description of the trade dress (as identified in this order) and the photographs attached to the Complaint that the trade dress is decorative instead of functional.").

    2.    **Secondary Meaning**

Arctic Zone also argues that the FAC does not sufficiently allege that the Bottle Trade Dress has acquired secondary meaning. "Secondary meaning is used generally to indicate that a mark or dress 'has come through use to be uniquely associated with a specific source.'" *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 766 n.4 (1992) (quoting Restatement (Third) of Unfair Competition § 13, cmt. e (Tent. Draft No. 2, Mar. 23, 1990)). A plaintiff can show secondary meaning through evidence that "in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Id.* (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982)); *Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*, 419 F.3d 576, 579 (7th Cir. 2005) (a product design acquires secondary meaning where "consumers understand the design elements to signify the goods' *origin* and not just its attributes"). Such evidence could include "direct consumer testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, place in the market and proof of intentional copying." *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 291 (7th Cir. 1998) (quoting *Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 393 (7th Cir. 1992)).

Arctic Zone argues that BlenderBottle only conclusorily alleges that its product is unique, without providing any supporting details. Arctic Zone again relies on the USPTO's nonfinal action, as well as BlenderBottle's focus in its branding and marketing on the agitator found in its shakers, not the Bottle Trade Dress. As already discussed, these arguments ask the Court to improperly go beyond the pleadings and consider extrinsic evidence that contradicts the FAC's allegations. *Cf. Williamson*, 714 F.3d at 436 (court cannot consider extrinsic evidence without converting a motion to dismiss into a motion for summary judgment unless the documents are "central to the complaint and referred to in it"). Although the Court refuses to do so, Arctic Zone's arguments demonstrate that whether a mark has acquired secondary meaning involves a fact-specific inquiry generally not appropriate for decision on a motion to dismiss. *See, e.g.*, *Dean v. Cortes*, No. 2:18-cv-02335, 2018 WL 3425016, at *6 (C.D. Cal. July 12, 2018) ("[C]ourts have determined that secondary meaning need only be pled generally for purposes of defeating a motion to dismiss."); *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 213 (S.D.N.Y. 2015) ("[T]he question of whether a descriptive mark has acquired the secondary meaning necessary to be distinctive generally should not—and here cannot—be resolved on a motion to dismiss.").

At this stage, BlenderBottle need only plead a plausible "link in the minds of consumers between the [product] and its source." *Weber-Stephen Prods.*, 2013 WL 5782433, at *5 (quoting *Jay Franco & Sons, Inc. v. Franek*, 615 F.3d 855, 857 (7th Cir. 2010)). BlenderBottle has done this through allegations that it sells shakers prominently featuring the Bottle Trade Dress worldwide, its shakers have attracted significant media attention, it has advertised the shakers extensively, it has derived millions of dollars in sales from the shakers, and consumers have come to identify products with the Bottle Trade Dress with BlenderBottle. *See id.* at *6

(allegations that trade dress is "unique and has a distinctive appearance," along with allegations that the plaintiff "expended considerable time, effort and resources to develop its trade dress" plausibly alleged the products had achieved secondary meaning). While BlenderBottle may have difficulty actually proving secondary meaning with respect to the Bottle Trade Dress, that remains a question more appropriate for resolution on a more developed record.

3. **Likelihood of Confusion**

Finally, Arctic Zone argues that BlenderBottle has not sufficiently pleaded a likelihood of confusion. Arctic Zone maintains that the FAC includes only conclusory allegations of likelihood of confusion and posits that no such confusion could occur because it has never sold the AZ Pro Shaker individually and has instead included it only as part of a multi-item set featuring Arctic Zone's coolers. Again, however, Arctic Zone improperly asks the Court to consider evidence outside the pleadings, this time in the form of a declaration of Arctic Zone's president and chief executive officer. Because the Court cannot consider this evidence, it will only address whether the FAC includes sufficient allegations as to the likelihood of confusion.

BlenderBottle need not prove likelihood of confusion at this stage of the litigation, but it still must plead allegations that make it plausible that such likelihood of confusion exists. *See Fortres Grand Corp. v. Warner Bros. Ent. Inc.*, 763 F.3d 696, 700 (7th Cir. 2014) ("Allegations of consumer confusion in a trademark suit, just like any other allegations in any other suit, cannot save a claim if they are implausible."); *Top Tobacco v. Fantasia Distrib. Inc.*, 101 F. Supp. 3d 783, 790 (N.D. Ill. 2015) ("[T]his Court's role at the motion to dismiss stage 'is limited to assessing whether [Plaintiffs have] pleaded facts that plausibly could result in a successful outcome on the likelihood of confusion element of [their] claim." (alterations in original) (citation omitted)). The Court employs the Seventh Circuit's seven-factor test for determining

9

likelihood of confusion. *E.g.*, *Fortres Grand*, 763 F.3d at 701–02; *Mighty Deer Lick, Inc. v. Morton Salt, Inc.*, No. 17-cv-05875, 2020 WL 635904, at *6–7 (N.D. Ill. Feb. 11, 2020) (using the likelihood of confusion factors to address the defendant's argument on a motion to dismiss that the plaintiff did not allege likelihood of confusion).

The Seventh Circuit "uses the following seven factors to determine [ ] likelihood of confusion: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any evidence of actual confusion; and (7) the intent of the defendant to 'palm off' his product as that of another." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015). "No single factor is dispositive, and courts may assign varying weights to each of the factors depending on the facts presented," but the Seventh Circuit has recognized that the marks' similarity, the defendant's intent, and actual confusion "are especially important." *Id.*; *Packman v. Chicago Trib. Co.*, 267 F.3d 628, 643 (7th Cir. 2001). With these factors in mind, the Court now turns to the FAC.

*Factor 1*: With respect to the marks' similarity, the Court considers "whether the viewer of an accused mark would be likely to associate the product or service with which it is connected with the source of products or services with which an earlier mark is connected." *Sorensen*, 792 F.3d at 726 (citation omitted). The FAC includes a side-by-side comparison of the two products, which, given the similarities, suggests that a viewer could confuse Arctic Zone's shaker with BlenderBottle's.

*Factor 2*: For similarity between products, "courts ask 'whether the products are the kind the public attributes to a single source.'" *KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005, 1015 (N.D. Ill. 2014) (citation omitted). Here, the FAC alleges that the parties sell

identical products, which could support a finding for BlenderBottle on this factor. *See Mon Aimee Chocolat, Inc. v. Tushiya LLC*, No. 15 C 4235, 2015 WL 6407758, at *5 (N.D. Ill. Oct. 22, 2015) (the plaintiff sufficiently alleged the existence of the second factor "by claiming that both parties sell chocolate and confectionary products").

*Factor 3*: With respect to the area and manner of concurrent use, the Court asks "whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." *KJ Korea*, 66 F. Supp. 3d at 1016 (citation omitted). To answer this question, the Court considers the "relative geographical distribution areas, evidence of direct competition between the products, whether products are sold to consumers in the same type of store or similar section of a particular store, and whether the product is sold through the same marketing channels." *Top Tobacco*, 101 F. Supp. 3d at 790. Here, the FAC alleges that Arctic Zone sells its product through overlapping channels and that Sam's Club carries both products. This factor again supports BlenderBottle.

*Factor 4*: BlenderBottle does not argue that the FAC addresses this factor, which looks at the degree of care customers will likely exercise. Thus, this factor does not support a likelihood of confusion finding.

*Factor 5*: For the strength of the plaintiff's mark, "courts examine 'the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular . . . source.'" *KJ Korea*, 66 F. Supp. 3d at 1016 (citation omitted). "A mark's strength ordinarily corresponds to its economic and marketing strength." *Sorensen*, 792 F.3d at 731. The FAC suggests that this factor weighs in favor of BlenderBottle because it includes allegations of BlenderBottle's extensive marketing of the shakers, media coverage of the shakers, and the public's association of the shakers with BlenderBottle. *See Barbecue Marx, Inc. v. 551*

*Ogden, Inc.*, 235 F.3d 1041, 1045 (7th Cir. 2000) (the plaintiff's use of its mark for six years and its good reputation warranted weighing the fifth factor in favor of a likelihood of confusion); *Mighty Deer Lick*, 2020 WL 635904, at *7 (allegation that the plaintiff's mark was "widely recognized as being associated with [the plaintiff] and high-quality goods" satisfied the fifth factor).

**Factor 6**: BlenderBottle concedes that it has not pleaded any facts from which the Court can reasonably infer actual confusion. Nonetheless, "the absence of factual allegations demonstrating actual confusion is not dispositive," *KJ Korea*, 66 F. Supp. 3d at 1016, because "evidence of actual confusion . . . is not required to prove that a likelihood of confusion exists," *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001).

**Factor 7**: This factor primarily looks to whether "the defendants are attempting to 'pass off' their products as having come from the plaintiff." *Packman*, 267 F.3d at 644. BlenderBottle alleges on information and belief that Arctic Zone "intended to blatantly copy" BlenderBottle's designs so as to pass off its goods as BlenderBottle's. Doc. 23 ¶ 31. Because BlenderBottle does not provide any support for this conclusion, this factor does not weigh particularly heavily in either direction. *See Top Tobacco*, 101 F. Supp. 3d at 791 (unsupported allegations of intent did not "weigh particularly heavily in favor of or against likelihood of confusion").

In sum, BlenderBottle has alleged sufficient facts pertaining to four of the seven likelihood of confusion factors: the first, second, third, and fifth factors. By doing so, BlenderBottle has raised the possibility of likelihood of confusion "above a speculative level," *Horist v. Sudler & Co.*, 941 F.3d 274, 278 (7th Cir. 2019) (citation omitted), especially given the fact-intensive nature of weighing the different factors, *see Packman*, 267 F.3d at 643; *Top Tobacco*, 101 F. Supp. 3d at 790. Courts from this district have similarly found that complaints

that plead sufficient facts pertaining to four of the seven factors adequately allege likelihood of confusion. *See, e.g.*, *Mon Aimee Chocolat*, 2015 WL 6407758, at *5–6 (the plaintiff adequately pleaded likelihood of confusion with allegations pertaining to the first, second, third, and fifth factors); *Top Tobacco*, 101 F. Supp. 3d at 789, 792 (same); *Slep-Tone Ent. Corp. v. Coyne*, 41 F. Supp. 3d 707, 715–17 (N.D. Ill. 2014) (likelihood of confusion adequately pleaded where the complaint alleged sufficient facts pertaining to the first, second, fourth, and fifth factors). Therefore, although discovery may disprove BlenderBottle's allegations, the Court finds that BlenderBottle has sufficiently alleged its trade dress infringement claims at this stage.

## II. State Law Claims (Counts 4, 5, and 6)

Arctic Zone initially argues that the Court must dismiss BlenderBottle's state law claims because they are derivative of its trade dress infringement claims and so fail on the same grounds. *See IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.*, 304 F. Supp. 3d 746, 759 (N.D. Ill. 2018) ("The Court applies the same analysis for the Lanham Act and common law claims."); *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994) ("Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act."). But because the Court finds that the trade dress infringement claims may proceed, the Court cannot dismiss the state law claims on this basis.

Next, Arctic Zone argues that the UDTPA claim fails because the FAC does not allege a risk of future harm to support injunctive relief. "The likelihood of future harm occurring absent an injunction is an element of liability on the claim, not merely a separate element of damages." *ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 282 F. Supp. 3d 1043, 1050 (N.D. Ill. 2017). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding

13

injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). But here, BlenderBottle does not rely solely on past exposure, alleging that Arctic Zone's sale of the AZ Pro Shaker Bottle will continue to cause BlenderBottle lost sales and revenue until Arctic Zone stops selling its shakers. This suffices at the pleading stage to suggest a likelihood of future harm. *See Power Cell LLC v. Spings Window Fashions, LLC*, No. 17 C 4382, 2018 WL 1911765, at *3 (N.D. Ill. Apr. 23, 2018) (allegation that the plaintiff would continue to suffer damage to its brand and lose business and profits if the defendant did not retract misleading statements sufficed at the pleading stage to allege future harm).

As for the ICFA claim, Arctic Zone argues that the FAC does not meet Rule 9(b)'s particularity requirement and fails to allege a nexus to consumer protection concerns. As BlenderBottle points out, it may recover for either deceptive or unfair practices, *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (2002), and BlenderBottle only seeks to proceed on an unfair practices theory. An unfair practices claim need not meet Rule 9(b)'s heightened pleading standard because it is not based on fraud. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). As for Arctic Zone's remaining argument, as a non-consumer, BlenderBottle must allege that Arctic Zone directed its actions to the market generally or that the actions involved consumer protection concerns. *Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 912 (N.D. Ill. 2012). On this point, BlenderBottle alleges that Arctic Zone's conduct has caused confusion, with the public believing that Arctic Zone's shakers are associated with BlenderBottle's. While the evidence may not bear this out, at this stage, the allegations of consumer confusion suffice to plead the required consumer nexus. *See Towada Audio Co. v. Aiwa Corp.*, No. 18-cv-4397, 2019 WL 1200748, at *9 (N.D. Ill. Mar. 14, 2019) (allegations of

consumer confusion sufficed to plead a consumer nexus); *Gold v. Golden G.T., LLC*, No. 05 C 288, 2005 WL 2465815, at *4 (N.D. Ill. Oct. 4, 2005) ("Misrepresentations made by the defendant that are likely to cause confusion, mistake or deception as to the affiliation or association with the plaintiff may satisfy this requirement if they are directed to 'consumers,' as opposed to simply 'customers' of the business plaintiff.").

As for the common law unfair competition claim, Arctic Zone argues that the UDTPA codified this claim and so it cannot proceed separately. But the UDTPA does not foreclose the possibility of proceeding on an Illinois common law claim for unfair competition, and so BlenderBottle may pursue its unfair competition claim alongside the UDTPA claim. *See* 815 Ill. Comp. Stat. 510/2(c) ("This Section does not affect unfair trade practices otherwise actionable at common law or under other statutes of this State.").

### III. Patent Infringement Claim (Count 1)

Finally, Arctic Zone argues that the Court should dismiss BlenderBottle's claim for willful patent infringement. A plaintiff can recover enhanced statutory damages for willful or bad faith infringement. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 136 S. Ct. 1923, 1930 (2016). While awards of enhanced damages typically involve "egregious cases of culpable behavior," *id.* at 1932, at the pleading stage, courts in this district have only required allegations that Arctic Zone knew of both the '032 Patent and its infringement, *Cascades AV LLC v. Evertz Microsystems LTD*, No. 17 CV 7881, 2019 WL 172758, at *6 (N.D. Ill. Jan. 11, 2019); *see WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) ("Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages.").[5]

---

[5] Some courts have noted a debate as to whether a patentee must allege egregious behavior to survive a motion to dismiss a willful patent infringement claim. *See Schwendimann v. Stahls', Inc.*, 510 F. Supp. 3d 503, 512–513 (E.D. Mich. 2021) (collecting cases on both sides of the debate); *Puget Bioventures, LLC v. Biomet Orthopedics LLC*, 325 F. Supp. 3d 899, 910 (N.D. Ind. 2018) ("*Halo*'s effect on the

"[P]leading knowledge requires only allegations that the party inducing or contributing to infringement know of (or be willfully blind to the existence of) a patent, and that the product or activity at issue infringes." *Cascades AV*, 2019 WL 172758, at *6. "It is arguably sufficient to plead that a notice of infringement was sent to the accused infringer, because implicit in this is the inference that such notice (1) notified a defendant of the existence of the patent and (2) informed them of the infringement." *Id.* (citing *Cascades Branding Innovation, LLC v. Walgreen Co.*, No. 11 C 2519, 2012 WL 1570774, at *3 (N.D. Ill. May 3, 2012)).

In this case, BlenderBottle has attached to the FAC a letter it sent to Arctic Zone on January 15, 2020, which notified Arctic Zone that its shakers infringed at least claim 18 of the '032 Patent and enclosed the '032 Patent for Arctic Zone's review. Doc. 23-2 at 2. In the letter, BlenderBottle demanded that Arctic Zone stop infringing the '032 Patent and compensate BlenderBottle for its losses as a result of Arctic Zone's infringement. *Id.* at 3. It also stated that "[a]ny further sales of the infringing products will constitute additional evidence of willful infringement." *Id.* Arctic Zone received this letter over a year before BlenderBottle filed suit on February 26, 2021.

Arctic Zone argues that the January 15, 2020 letter does not suffice to suggest its knowledge of the patent or infringement because the letter did not include a claim chart or specifically identify the accused products. But Arctic Zone asks for too much at the motion to dismiss stage, ignoring that the letter specified that Arctic Zone's shakers infringed at least claim 18 of the '032 Patent and included an image of the allegedly infringing shaker. This suffices to plead that Arctic Zone knew of the patent and the alleged infringement. *See Cascades AV*, 2019 WL 172758, at *7 (letter identifying the patents at issue, indicating that "various" of defendant's

---

pleading standard for willful infringement, however, remains unclear."). Because Arctic Zone focuses only on the knowledge requirement, the Court need not enter into this debate here.

products infringed those patents, and offering to discuss a license sufficed to allege knowledge). Therefore, the Court will allow BlenderBottle to proceed with its request for enhanced damages based on willful infringement of the '032 Patent at this time.[6] *See Puget Bioventures*, 325 F. Supp. 3d at 910 ("Allowing allegations of willful infringement to advance past the current stage appears prudent, given that, in the opening round of litigation, the full extent of the circumstances accompanying a given case will seldom be readily apparent to the Court.").

## CONCLUSION

For the foregoing reasons, the Court denies Arctic Zone's motion to dismiss the first amended complaint [27].

Dated: November 16, 2021

SARA L. ELLIS
United States District Judge

---

[6] Arctic Zone also argues that BlenderBottle has not sufficiently alleged that Arctic Zone knew of the '032 Patent or alleged infringement prior to the January 15, 2020 letter, an issue that may become relevant given that the '032 Patent expired soon after on February 18, 2020. The Court does not find it needs to address Arctic Zone's knowledge prior to January 15 at this time, leaving questions of any additional prior knowledge for discovery.